The case for argument is United States v. Gates, Mr. Hillis, if you can. May it please the Court, Counsel, again my name is Daniel Hillis, I'm with the Federal Public Defender's Office, and I represent Mr. Gates in this appeal. So he challenges the District Court's decision to impose a four-level guideline enhancement for using a gun in connection with another felony. The other felony in this case was drug distribution, and there are two drug transactions, but neither support the enhancement. I'd like to talk first about the transaction involving Mr. Calla Hall. Mr. Gates provided a marijuana-like substance to Mr. Hall. Mr. Hall promised to pay for it later, but Mr. Hall didn't have money, and so Mr. Hall, on his own initiative, decided to bring collateral over to Mr. Gates. Mr. Gates did not know that this was going to happen, he did not request it, and when the collateral came, it was a gun. It was an unforeseen event, which is important under the guidelines. This was not something that was requested or anticipated, it was unforeseen. So it was never a condition of the sale or any future sale that he receive this gun as collateral, and that's important because the gun then didn't facilitate the instant transaction or a future transaction. No future dealings were planned between these two individuals, so far as I'm able to determine from the record. Also, the District Court, and this is important, was unable to determine that the marijuana-like substance was a controlled substance. In fact, it was something that the District Court couldn't determine at all. Its distribution, if it's not a controlled substance, isn't a felony. So that, again, ties back into the applicability of the enhancement. If it's not a controlled substance, it's not a felony, the transfer of the gun doesn't further any felony. Well, it became a controlled substance in the course of this, his dealings, didn't it? Yes, provided it's the same substance, but that's an unknown. But yes, there's a later transaction where it does have the presence of this ab chemica that makes it a controlled substance. But I'm saying for the instant transaction, the gun wasn't requested as collateral. We don't know what the substance was. It was, for the reasons I said, not a basis, not a proper basis to use that transaction to impose the order. The gun that he was prosecuted for, having the gun, you know. Yes. His possession of the gun. Yes, he's already been penalized for the gun. It's just now can we penalize him in an additional fashion for the use of the gun in furtherance of a felony. He was glad to get the gun, wasn't he? Well, I'm sure, in retrospect, would have rather had money. Well, he gave a gift. He gave a little marijuana. True, which brings me to my second transaction. And this is maybe more unusual. It's the giving season for many, but this was with unintended consequences of an additional four-level enhancement because he gave away a small amount of synthetic marijuana. And in this instance, it is synthetic marijuana. So it's the presence. The presence of the gift. That was the present. Exactly, exactly. That's the gift. So he sells the gun to confidential informant number two. This is the gun that he got from Mr. Hall. It was a discrete transaction. The sale is over. And then he gives this amount away. It's a discrete transaction. It doesn't further anything. It is something that he does once the gun sale is concluded. So, again, back to the enhancement. It doesn't further anything. It's not used in connection with the sale of that gun. It is something that is almost a random act that occurs separate in time. It's not a basis for the enhancement. The gun also, it wasn't used to protect any drugs or drug proceeds. It had already been sold. It had been transferred. And so the cases where the government cites, it's essentially the fortress theory where we assume that guns are used to protect drugs and drug proceeds. We don't have that here. The gun has been sold. It's been dispossessed. Then we have drugs that are given and the sale of the gun is the only proceeds that is left. It doesn't have the gun to protect the money or the drugs at that point. So it just doesn't fit. The fortress theory doesn't apply here. And it's not an instance under the other case law where this sweetens the pot, which sounds like a bad expression in a synthetic marijuana transaction. But nevertheless, it is the thought. It's separate. It's not something where we're going to combine two different items for sale and say, you know, let's adjust the price relatively or buy this and I'll throw this in. That's not the circumstance. The gun, again, is a discrete transaction. He gives away marijuana. Do we know how the government learned of the first transaction? Because they sent the informant in specifically to get the gun out of hock, basically, right? There were two different informants, and I'm not sure which one the information came from, but there was CI1 and CI2, and I think the gun information came from one of the two. I thought it was CI1, Your Honor. Okay. But the government obviously knows he's holding this gun pursuant to the first transaction and sent an informant in to buy it back, basically. Yes. That's right. And that's when this gifting occurs. The unfortunate gifting occurred. And is that the drug transaction we're focusing on? The second drug transaction is the gifting. And, again, this is the only time we're able to determine that it is a controlled substance. So that much is here. But it's all the other things that are missing that make the enhancement inapplicable in this case. They're discrete transactions. The gun's already been sold. Transferring the gun is not in furtherance of any felony. It just doesn't apply to these facts. And so the government, for that matter, agreed that these are discrete transactions, and I point you to Record 28, where I think it's the government's commentary, says that the gun transaction could be considered separate from the drug transaction. So, analytically, I think we're sound on this. These are unusual facts, but it all goes to show one thing. The enhancement was incorrectly applied. But does it make any difference? The judge said this sentence was about right regardless. Well, that doesn't sound like it quite gets you to harmless air if that's where we're going on this. That's equivocal, about right. We have an anchoring effect that is present whenever we determine what the appropriate guideline range is. So strip off those four levels. My client's guideline range goes down precipitously. The judge may have a different view now, and especially given the chance to go back and reexamine these facts and see that the enhancement doesn't apply, this would seem like a less egregious case. Judge Peterson actually said a lot more than that. He said if I were to relieve Mr. Gates from the effect of these enhancements, including the one that's challenged here, we end up with a sentence that's just about right. I mean, that seems to me a statement that the judge is following our instructions to announce whether the sentence is right under 3553A without regard to the guidelines range. So I guess I'm hearing in the question two words that stick out more to me, perhaps, than how the question is intended, but just about right doesn't mean right. It doesn't say definitely I'd give you the same sentence. He also encouraged him to take the issue up on the appeal. So I think the judge is amenable to giving a different sentence, ultimately, were my client to prevail on this enhancement issue. I think if he absolutely thought it didn't matter, I'm always going to give you the same sentence, he wouldn't suggest the issue go up on the appeal, and he wouldn't say it's just about right. He would say it's not going to change my mind. Guidelines are a wonderful thing. Keep us in business. I have nothing further. Thank you. Thank you, Mr. Ellis. Mr. Trillo. Thank you, Your Honors. Tony Trillo for the United States. I want to start off with something that Mr. Ellis did not address, and that's what this guideline was meant to target, and that is the potential that firearms have to cause violence or, sorry, for there to be a risk of violence, a risk of harm when they're in the possession of a gun. Well, what's the potential here? I mean, he's just taking the gun as collateral. He's not taking it in order to use it, right? That's true, Your Honor. Why does anyone care about that? As the Supreme Court has noted. It's just like the last case. The government didn't understand. Trivial cases. One of the prosecutor guys, he took the gun for collateral. He gave it back. No one's harmed. He didn't use the gun for anything. Why do you care about that? Judge, a gun can go from collateral to being used. Yeah, well, all right. You tell me about the cases where the gun goes from collateral to being used to kill people. Do you have any cases in your memory? The Supreme Court has noted in Smith v. United States that a gun can be turned from currency to cannon. Well, of course the gun can be used. I'm asking you whether there are cases like that where a gun used as collateral is turned into a murder weapon or threat weapon or something. Off the top of my head, Your Honor, I don't have a case like that. Yeah, well, all right. So why are you worried about this gun? Because the Sentencing Commission is worried about the potential that a firearm has. Potential. Look, if you have a potential, which after many years never becomes actual, you forget about it. True, but this is true. The Justice Department apparently has nothing to do anymore. So it brings these trivial cases. Well, with all due respect, Your Honor, I don't think it's trivial. Well, I think it's totally trivial. I mean, it's one thing, the sale of the drugs, right, but the gun? The defendant had been selling synthetic marijuana for three months leading up to February 7, 2015. No, I understand the sale of the marijuana. I understand the sale of the drug being criminal. I don't understand the gun getting into it. Which is what he prosecuted for. He's manufacturing and delivering, and ultimately manufactures and delivers a substance that is a controlled substance. During that time, he accepts the gun as collateral. He keeps it in his garage. It's loaded. It's a semi-automatic weapon. It's got an extended clip in it. And it's in his garage in the very same place where he consistently sells on a weekly basis to both the confidential informant and to another person we know of, Johnny Morris. I don't know who else he's selling it to, but there is the potential. And I understand the court has a, you know, I understand that the potential may not be something that the court is worried about, but it's something definitely that the U.S. Sentencing Commission was worried about, and it's something that this district court was worried about. We didn't cite this in our brief, Judge, but on page 24 of the appendix, Judge Peterson says, I don't have a lot of information about the relationship here among Mr. Gates, Mr. Hall, and confidential informant number two, but when there's a dangerous weapon that's circulating among a community of people who are engaging in drug trafficking, it poses a risk whether Mr. Gates intended to shoot somebody. But apparently the risk has never materialized. It's the theoretical issue. It's the potential, and that's what the guidelines require is just the potential to facilitate a drug offense. Yes. The first transaction doesn't count, right, because synthetic marijuana was not at that time on the controlled substance list? No, Your Honor. I don't think that's quite right. The district court judge made a determination, a finding, that that transaction did involve controlled substances based on the fact that seven days later Mr. Gates distributed a controlled substance. So he used the later distributions, the admission that Mr. Gates made during an interview that he was selling drugs to Calla Hall, that first transaction, and the evidence that he had that there's been three months of drug dealing going on to come to the conclusion that that did involve a controlled substance, the same controlled substance. Do we know that the first transaction was synthetic marijuana? We know it was synthetic marijuana. We just don't know if it was. And synthetic marijuana was not listed until February 1st? This particular synthetic marijuana wasn't listed until January 30th, 2015. January 30th. Okay. So the second transaction occurs on February 7th, and the facts are that the earlier transaction was seven to ten days earlier. There's two facts. There's confidential informant number two who says that a week earlier, CI1, confidential informant number one, was discussing the sale of the gun with Calla Hall. And then ultimately that gun is sold. So there's Mr. Gates' statement that it was seven to ten days earlier. There's also the statement from CI2, number two, that it was actually seven days earlier. So the court had to choose, and I think it chose seven days as opposed to seven to ten days. So the court made a finding that this first transaction occurred on January 30th? Not a specific finding, but I think it's a finding that had to be within its ultimate finding that it was a controlled substance. So not a specific finding that it occurred on January 30th. Well, we kind of need that, don't we, to count the first transaction? Because it wasn't illegal to deal in synthetic marijuana as of January 29th. I think that is a weakness in this case on that particular transaction. But I think to be able to find that it was a controlled substance, he necessarily had to find that it occurred a week earlier, not more than a week earlier. And this isn't the Smith case where the defendant is actually doing the bartering of the gun? He receives the gun? Correct. He receives the gun as collateral. Unexpectedly. As collateral, not as payment. He's expecting to get cash at some point? Yes, and there is a debt that arises, and at some point there's a gun that's given as collateral for the debt. Correct. If we count only the second transaction, do you lose? No, because the court not just counted that transaction, but also counted the possession with intent to distribute that happened before that transaction. So the court says, and that's a specific finding of the court, that the enhancement applies because there's a possession before it's handed over to CI No. 2. And that possession is the manufacturing and possession with intent to distribute synthetic marijuana. What is that based on? The fact that he . . . The marijuana was gifted. Well, he had to possess it before he gifted it, right? And he had the intent to distribute it because he did. He did distribute it. And he had been for three months. That's the evidence that the court was considering. Can a person who has a gun license, can he use his gun as . . . give his gun to someone as collateral? A person who has a gun license, can he give it? I'm trying to understand your question. Well, if you have a gun license and you have a gun, so your lawful possession, can you use that as collateral? For what? In your transactions? You know, you buy something and you say, I don't have any money, but you can have my gun as collateral. I suppose. Is that lawful? I don't know the answer to that. Okay. Where I think this takes us is, not only do we have, I think, a situation where we don't have clear error, but . . . I think, in addition to that, as Judge Sykes pointed out, the District Court Judge, Judge Peterson, was very clear in saying that if he were to relieve Mr. Gates of the enhancements, that the sentence is just about right. And, that he made, in the Statement of Reasons, it's record number 42, that the judge was . . . did put in there that the adjusted guidelines, had he not included the enhancements, would have been 30 to 37 months. And, that that sentence would have been within the adjusted guidelines. And, for those reasons, Your Honor, we think that the . . . that this Court should affirm the judgment in the sentence in this case. Okay. Thank you, Mr. Trillo. Mr. Hillis. Very briefly, the first transaction, they don't know what that substance was. They speculate that it's the same substance, but there are a lot of variables when somebody is making stuff in their house, ordering chemicals. How much . . . what they combine to result in the specific chemical sequence that makes the controlled substance, is an inference that we just can't make. There are too many unknowns here. As for the second transaction, the government says he intended to distribute the synthetic marijuana, had the gun, therefore, the enhancements appropriately applied. The facts show that he didn't intend to distribute. He intended to sell the gun, and then, on the spur of a moment, gifted the marijuana. He was not holding the gun as some sort of protection for the ultimate effort to distribute the drugs. Well, that . . . I understand that to be not an argument that there wasn't a distribution in the second transaction, but that the gun didn't facilitate it. Is that how to interpret what your argument is? I think that is the fairest thing. I was just trying to respond to what the government said. But, yes, I don't think that the gun was used to facilitate a drug transaction. As I began, there were two discrete transactions. There was a sale. It was complete. The gun was dispossessed, and then the marijuana was gifted. The gun could not have furthered anything. The gun was already out of the equation. I have nothing further. Thank you. Okay. Well, thank you very much to both counsel.